UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| BROADWAY CHRYSLER, DODGE, JEEP, INC., GAVINS POINT RECREATIONAL CENTER LLC, LEWIS & CLARK FORD LINCOLN INC, and JMN BUSINESS VENTURE LLC, | Case No. 4:26-cv-4031 |

                    Plaintiffs,

v.                                                      COMPLAINT


ACRISURE PROTECTION GROUP, LLC,
SWDS HOLDINGS, INC. and CHRIS
BLAKELY,

                    Defendants.

## **COMPLAINT**

Plaintiffs, Broadway Chrysler Dodge Jeep Ram Inc., Gavins Point Recreational Center LLC, Lewis & Clark Ford Lincoln Inc., and JMN Business Venture LLC ("Plaintiffs"), by their attorneys, Boyce Law Firm, LPP and Bellavia Cohen, P.C., for their Complaint against Defendants, allege as follows:

## **PRELIMINARY STATEMENT**

1.     Plaintiffs are four local automobile and recreational vehicle ("RV") dealerships under family ownership and management. Each has been the victim of more than four years of false and undisclosed overcharges in the form of "administrative fees" for a reinsurance plan arrangement with Defendants which was originally proposed to reduce their warranty insurance costs through self-insurance. Defendants' hidden "administrative

1

charges" far exceeded the low-cost, specific and stated amounts represented to Plaintiffs that would be charged and diverted away reinsurance funds that were supposed to be held and invested for Plaintiffs' benefit in offshore pooled accounts to cover claims. Instead, Defendants converted and pocketed this money which amounts to approximately $800,000 dollars. Plaintiffs only recently discovered these hidden charges and now seek to recover this money, as well as all other consequential damages, interest, statutory penalties, substantial punitive damages and attorneys' fees.

## **JURISDICTION AND VENUE**

2.      This Court possesses diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1).

3.      Venue is proper in this District, pursuant to 28 U.S.C. § 1391(a) because three of four of the Plaintiffs' places of businesses are located in this District, a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, and all Plaintiffs (including the Plaintiff with a place of business outside the District) have interrelated claims arising from events occurring within the District.

4.      This Court has supplemental jurisdiction over the pendent state law claims herein, pursuant to 28 U.S.C. § 1367.

## **THE PARTIES**

### A. **Plaintiffs**

5.      Plaintiff, Broadway Chrysler Dodge Jeep Ram Inc., is a corporation organized under the laws of the State of South Dakota doing business as "Broadway Chrysler" ("Broadway") with its principal place of business located at 2720 Broadway Ave, Yankton, South Dakota 57078.

6.      Plaintiff, Gavins Point Recreational Center LLC ("Gavins Point"), is a limited liability company ("LLC") organized under the laws of State of South Dakota with its principal place of business located at 3311 Debra Blvd., Yankton, South Dakota 57078.

7.      Plaintiff, Lewis & Clark Ford Lincoln Inc. ("Lewis & Clark"), is a corporation organized under the laws of the State of South Dakota with its principal place of business located at 316 Capital Street, Yankton, South Dakota 57078.

8.      Plaintiff, JMN Business Venture LLC ("JMN Business"), is a corporation organized under the laws of the State of Nebraska doing business as "Red 10 RV," with its principal place of business located at 1308 W. Omaha Avenue, Norfolk, NE 68701.

9.      Plaintiffs Broadway, Gavis Point, Lewis & Clark and JMN Business are and were, at all relevant times, under family ownership, management and control.  All had the same contractual understanding and agreement with Defendants, all were overcharged by Defendants through undisclosed "administrative fees," and all suffered resulting damages.

**B.      Defendants**

10.      Defendant Acrisure Protection Group LLC ("Acrisure") is a limited liability company organized under the laws of the State of Michigan, with a principal place of business at 8659 Research Drive, Irvine, California. Upon information and belief, at all relevant times, Acrisure has owned and controlled Defendant SWDS Holdings Inc., which is a wholly owned subsidiary.

11.      Defendant SWDS Holdings Inc. is a corporation organized under the laws of the State of Delaware with a principal place of business at 8659 Research Drive, Irvine, California.   Upon information and belief, on or about July 8, 2021, SWDS acquired ownership of the trade name "Blakely Enterprises" and all related business conducted under

3

that trade name; including the preceding and subsequent reinsurance business conducted with Plaintiffs; and, accordingly, at all relevant times since, SWDS is responsible and liable for business conducted through the trade name "Blakely Enterprises," including the reinsurance business conducted with Plaintiffs.

12.    Defendant Chris Blakely ("Blakely") is an individual who resides in North Platte, Nebraska. Prior to its acquisition by SWDS on or about July 8, 2021, Blakely conducted business as "Blakely Enterprises" and he acted on behalf of Blakely Enterprises in all business dealings. Upon information and belief, Blakely is now an officer, employee and/or person under the control of Acrisure and/or SWDS. Blakely initiated the repurchase plan arrangement with Plaintiffs in dispute thus, he has and had knowledge that can be imputed to Defendants Acrisure and SWDS.

13.    Defendants Acrisure, SDWs and Blakely are all jointly and severally liable for Plaintiffs' damages.

## FACTUAL ALLEGATIONS

### Background: Plaintiffs' Warranty Plans

14.    Plaintiffs are four sister dealerships that are under the common ownership, management and control of local residents. Two of the Plaintiffs are automobile dealerships which sell cars, trucks and other vehicles to the public, while two exclusively sell RVs to the public.

15.    Like most automobile dealerships, Plaintiffs offer a warranty program for its customers who purchase vehicles. Under its warranty program, Plaintiffs' customers can purchase various warranties and vehicle service contracts ("VSCs") of different lengths or types to protect against repair and maintenance costs that are not covered by the manufacturer's

warranty. For instance, Plaintiffs offer extended warranties and VSCs for one-year, three-year, four-year, five-year, six-year and seven-year time periods. Plaintiffs also offer similar-type plans for tire and wheel, paint and fabric and other coverages.

16.     Dealers' warranty and VSC programs are often administered by an insurance company. Because these warranties sold by dealers put them at risk for the cost of repairs and parts, as well as require claims administration, dealers will often enter administrative service contracts with an insurance company. Under an administrative service contract, the dealer will pay monthly premiums to the insurance company for the life of the warranty or VSC, while the insurance company will administer and manage the claims program for the customers. These warranty and VSC programs generally lead to repair and service work for the dealer, with the risk and administrative costs fixed and offset by the insurance.

17.     For many prior years, Plaintiffs' warranty and VSC program were administered through a business relationship with Defendant Blakely and his company, Blakely Enterprises (now Defendant SWDS). Defendant Blakely and Blakely Enterprises acted as the insurance broker and agent for CNA National, the insurance company which had administrative service contracts with Plaintiffs' automobile dealerships for its warranty and VSC programs and acted as broker and agent for NWAN, Inc. which had administrative service contracts for Plaintiffs' RV dealerships.

18.     In or about March 2020, at or about the same that businesses were shutting down due to the Covid-19 Pandemic, Defendant Blakely acting on at all times on behalf of Blakely Enterprise solicited and induced Plaintiffs to change their insurance arrangement from direct administrative service contracts to a reinsurance plan arrangement. At the time, Defendant

Blakely purported to specialize in advising on products and solutions warranty and VSC administration for vehicle dealerships nationwide, including reinsurance plans.

19.    Initially, Plaintiffs Broadway and Lewis & Clark signed up for a reinsurance plan through Defendant Blakely and, later, Plaintiffs Gavin Point and JMN Business joined.

**Defendants' Representations: Reinsurance Plan Has Low Stated Costs**

20.    Defendant Blakely solicited and induced Plaintiffs into entering into reinsurance plans for its warranty and VSC program by describing the arrangement and representing that it would provide benefits to Plaintiffs from significant overall cost reduction, as well as provide a pool of funds for potential claims with any excess invested on their behalf to generate returns.

21.    Defendant Blakely represented to Plaintiffs that under the reinsurance plan, Plaintiffs would pay only "administrative fees" and that the difference would be paid into a reinsurance pool held offshore in Plaintiffs' name to cover claims under the warranty and VSC programs. The reinsurance pool would be managed by the same former insurance company as before, provide Plaintiffs with the same warranty and VSC administrative services at a significantly less costly rate, and that the difference would generate savings and investment returns in a pool for Plaintiffs' benefit.

22.    Defendant Blakely represented to Plaintiffs that the costs would be lower to them from an offshore reinsurance plan because insurance companies contracting directly had to calculate actuarial rates and project losses according to formulas required by state regulators and the Internal Revenue Service. As a result, Defendant Blakely represented an offshore reinsurance program had lower costs and benefits for Plaintiff.

23.     Plaintiffs and Defendants Blakely consummated their contract via emails through which the following representations were made:

    a) Plaintiffs will only pay "administrative fees" in specific stated amounts for various VSC, warranty and other ancillary services contracts, and no other costs, commissions or payments than these fees. Instead, unbeknownst to them, Defendants imposed and charged exorbitant fees and markups that exceeded the stated amounts and were contrary to their original representations to the Plaintiffs;

    b) Plaintiff Broadway would only pay administrative fees of $165 per VSC, and between $75 and $85 per contract for ancillary services such as windshield contracts.

    c) Plaintiff Lewis & Clark would only pay administrative fees of $165 per VSC, and between $75 and $85 per contract for ancillary services such as windshield contracts.

    d) Plaintiffs Gavin Point and JMN Business would only pay administrative fees for VSC of $172 for a one-year contract, $178 for a two-year contract, $185 for a three-year contract, $191 for a four-year contract, $198 for a five-year contract, $204 for a six-year contract, and $210 for a seven-year contract.

    e) Plaintiffs Gavin Point and JMN Business would only pay administrative fees of $32 per contract for Paint & Fabric, $55 per contract for Gap coverage, $35 per contract for Tire & Wheel, and $17 per contract for Tire Seal.

f) All payments made by Plaintiffs in excess of the administrative fees would be invested in reinsurance pools for their benefits which would realize them far greater profits over time than the prior direct insurance arrangement.

24.    Plaintiffs justifiably relied upon these representations which induced them to enter into the repurchase plan with Defendants. For Plaintiffs, Broadway & Lewis & Clark, CNA National managed their reinsurance pool and for Plaintiffs Gavins Point and JMN Business, NWAN/NAE managed their reinsurance pool.

25.    Since on or about March 2020, through early 2025, Plaintiffs made their monthly payments for the reinsurance plan for the warranty and VSC contracts for their customers as they had before. Plaintiffs made these payments with the expectation and understanding that, as agreed, only the administrative fees in these amounts would be charged to them, and that the remainder of their payments would be held in the reinsurance pool and invested for their benefit.

26.    Unfortunately, Plaintiffs later learned that this was not so, and the representations made to them about the reinsurance plan were false and misleading.

27.    For five years, and without Plaintiff's knowledge or authorization, Defendants were deducting money from their monthly insurance payments for additional charges that were never disclosed to them either at the start or during the relationship. Plaintiffs had never agreed to these additional charges beyond just the administrative fees in the specified amounts disclosed to them at the start and believed that the correct amounts from their payments were regularly placed in the reinsurance pool held for their benefit.

**Plaintiffs' Discovery: Hidden Unauthorized and Excessive Charges**

28.    In late 2024, Plaintiffs received an accounting statement from CNA National which purportedly reflected their investment in the reinsurance pool managed by this company. Upon review of this statement, Plaintiffs noticed for the first time a sizeable discrepancy between

the figures reflected on the statement, and the figures they expected to be reflected on the statement. Plaintiffs, thus, began to inquire and investigate the discrepancy.

29.    In subsequent weeks, Plaintiffs had communications with Defendant Acrisure over the difference and discovered for the first time that they were paying hidden fees that were far higher than they realized or than were ever disclosed. Plaintiffs discovered that the charges deducted were far higher than the specific dollar amounts of the administrative fees specified to them in emails by Defendant Blakely at the start, or by other Defendants at various times over the years. Plaintiffs further discovered that their reinsurance pools received far less than expected.

30.    Based upon figures provided to them by Defendants, Plaintiffs discovered that the total amount of the undisclosed overcharges over the years equated to almost $800,000 in the amounts of between $701,373-to-$730,829, not including foregone interest on funds not invested for their benefit. In truth, contrary to their knowledge or authorization, Plaintiffs discovered that they to actually paid Defendants the following excessive fee charges:

   a.   Plaintiff Broadway relied on Defendants' representations that it would only pay
        administrative fees of $165 per VSC. Instead, Plaintiff Broadway was charged
        $428 per contract on 785 VSC contracts, for a difference or loss of $263 on each
        of the 785 VSC contracts. In addition, Plaintiff Broadway was charged $149-to-
        $183 per windshield contract which is $74-to-$108 more per contract than was
        represented for ancillary contracts such as windshields, for a loss to Plaintiff. As
        a result, Plaintiff Broadway, incurred damage and loss in the sum of at least
        $206,455.

b.  Plaintiff Lewis & Clark relied on Defendants' representations that it would only
pay administrative fees of $165 per VSC.  Instead, Plaintiff Lewis & Clark was
charged $428 per contract on 795 VSC contracts for a difference or loss of $263
on each of the 795 service contracts. In addition, Plaintiff Lewis & Clark was
charged $149-to-$183 per windshield contract which is $74.00-to-$108 more per
contract than what was represented for ancillary contracts such as windshields, for
a loss to Plaintiff.  As a result, Plaintiff Lewis & Clark incurred damage and loss
in the sum of at least $130,185;

c.  Plaintiffs Gavin Point and JMN Business relied on Defendants' representations
that they would only pay administrative fees for VSC of $172 for a one-year
contract, $178 for a two-year contract, $185 for a three-year contract, $191 for a
four-year contract, $198 for a five-year contract, $204 for a six-year contract, and
$210 for a seven-year contract.  Instead, Plaintiffs were charged far higher fees
that were never disclosed on 587 VSC contracts which exceeded the represented
amounts by $455-to-$493 per contract.  As a result, Plaintiffs incurred damage
and loss in the sum of at least $267,085-to-$289,391;

d.  Plaintiffs Gavin Point and JMN Business relied on Defendants' representations
that they would only pay administrative fees of $32 per contract for Paint &
Fabric, $55 per contract for Gap coverage, $35 per contract for Tire & Wheel, and
$17 per contract for Tire Seal.  Instead, Plaintiffs were charged far more than
represented: Plaintiffs were charged $192-to-$207 per contract for Paint & Fabric
on 367 contracts, for damage and loss in the sum of at least  $58,720-to-$64,225;
Plaintiffs were charged $134 per contract for Gap coverage on 352 contracts, for

damage and loss of $27,808; Plaintiffs were charged $135 per contract for Tire &
Wheel on 36 contracts, for damage and loss of $3600. Plaintiffs were charged in
$177-to-$212 per contract for Tire & Seal on 47 contracts, for damage or loss of
$7,520-to-$9,165. As a result, Plaintiffs incurred damage and loss in the sum of at
least $367,733-to-$394,189.

 e. In total, Plaintiffs incurred damages in the sum of at least $701,373-to-$730,829,
for excessive overcharges beyond Defendants' represented amounts as of
December 31, 2024, as well as any further fee overcharges that continued.

 31. These fee charges paid by Plaintiffs for the reinsurance plan from on or about
March 2021 through early 2025, were substantially far greater than represented and disclosed to
them by Defendants and were contrary to many representations made to them over the years
about these payments by Defendants. These hidden, undisclosed charges paid by Plaintiffs were
never invested in accounts for their benefit as represented, which denied them the full benefits
represented of the reinsurance arrangement and unjustly enriched Defendants at their expense.

 32. Plaintiffs had no knowledge of the excessive fee charges and could not reasonably
be expected to discover these charges due to their hidden, complicated and undisclosed nature
until revealed by Defendants in early 2025.

**Defendants' Liability: Each is Jointly and Severally Liable**

 33. Defendants are all jointly and severally liable to Plaintiffs for these excessive
fee overcharges which occurred for approximately four-to-five years. At the time,
Defendant Blakely solicited them for the reinsurance program, he conducted business as
"Blakely Enterprise" which was a trade name. Defendant Blakely remained liable for all
statements, communications and representations he made to the Plaintiffs at this time, as

well as subsequently over the years.

34.     Defendant SWDS is also jointly and severally liable with Defendant Blakely.
Upon information and belief, on or about July 1, 2021, Defendant SWDS acquired
ownership of "Blakely Enterprises" and all related business, assets, liabilities and claims
conducted under that trade name.  Defendant SWDS's acquisition of Blakely Enterprises
included all aspects of the reinsurance business with Plaintiffs, including all past and present
contractual commitments, liabilities, and claims arising therefrom.

35.     In the July 1, 2021, press release announcing its acquisition of Blakely
Enterprises, Defendant SWDS described the acquisition as an effective merger with
Defendant Blakely still leading the company and its team.  Defendant SDWS further advised
clients that "it would not change [their] current business relationship or support."  Upon
information and belief, at the time, Defendant Blakely became an officer, employee and/or
person under the control of Defendant SWDS, and his knowledge as well as liability for his
acts and omissions can be imputed to Defendant SWDS.

36.     At all relevant times, Defendant Acrisure has owned and controlled Defendant
SWDS.  In the July 1, 2021, press release announcing the acquisition of Blakely Enterprises,
Defendant Acrisure is the issuer of the press release on behalf of Defendant SWDS which is
described as Defendant Acrisure's "agency partner."  As result, in the acquisition, Defendant
Acrisure acquired "Blakely Enterprises" and all related business, assets, liabilities and
claims conducted under that trade name, along with all aspects of the reinsurance business
with Plaintiffs, including all past and present contractual commitments, liabilities, and
claims arising therefrom.

37.     Upon information and belief, at the time, Defendant Blakely also became an

12

officer, employee and/or person under the control of Defendant Acrisure, and his knowledge as well as liability for his acts and omissions can be imputed to Defendant Acrisure.

38.    For these reasons, Defendants Acrisure, SDWS and Blakely are each and all jointly and severally liable for Plaintiffs' damages.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Contract)

39.    Plaintiffs repeat, reallege, and incorporate by reference each of the above paragraphs as if fully set forth herein.

40.    Defendants' emails, communications, representations and other conduct constituted a legally binding and enforceable contractual agreement with Plaintiffs relating to a reinsurance plan; primarily that i) Plaintiffs would pay only administrative fees at stated levels from their insurance payments in specified amounts stated for particular services, ii) Plaintiffs would pay no other fees or charges, and iii) the difference between their payments made and the administrative fees charged would be invested on Plaintiffs' behalf in reinsurance pools held and invested for their benefit.

41.    Plaintiffs made their payments and performed their duties under their contractual agreement with Defendants.

42.    Defendants breached their contractual duties to Plaintiffs by, *inter alia*, i) charging fees to their payments which exceeded administrative fees only, ii) charging fees to their payments which exceeded the specified amounts stated to them for particular services, and iii) failing to invest on Plaintiffs' behalf the difference between the payments made and the administrative fees only in reinsurance pools held and invested for their benefit.

43.    As a result of Defendants' breach of their contractual duties, Plaintiffs suffered consequential damages and losses totaling approximately $800,000, together with interest thereon.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Conversion)

44.    Plaintiffs repeat, reallege, and incorporate by reference each of the above paragraphs as if fully set forth herein.

45.    Plaintiffs made payments under their reinsurance plan authorizing only that administrative fees in specified amounts stated for particular services be deducted, and that the remainder be invested for their benefit in reinsurance pools.  Plaintiff did not authorize any other charges, fees or payments to Defendants.

46.    Without their knowledge or authorization, Defendants received payments from Plaintiffs' insurance payments in amounts which exceeded the authorized administrative fees only.  By doing so, Defendants wrongfully converted Plaintiffs' funds for themselves.

47.    Defendants' unauthorized deductions were international and deliberate as they knew that the amounts exceeded the specified stated amounts authorized by Plaintiffs, the true amount of their deductions was hidden from Plaintiffs, and Defendants misled Plaintiffs in communications and emails over the years that only authorized deductions were made.

48.    As a result of Defendants' unauthorized deductions which converted their money, Plaintiffs suffered consequential damages and losses totaling approximately $800,000, together with interest thereon.

49.    Plaintiffs also seek all remedies available to them for conversion under South Dakota Codified Law § 21-3-3, including the value of their money at the time of conversion,

interest from that time and fair compensation for the time and money expended in pursuit of recovering their money.

50.    Additionally, in view of the Defendants' egregious, malicious, wanton, fraudulent conduct and disregard for Plaintiffs' rights, Plaintiffs seek punitive damages of $3 million.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Common Law Fraud)

51.    Plaintiffs repeat, reallege, and incorporate by reference each of the above paragraphs.

52.    Through emails, communications and other conduct, Defendants made false and misleading representations to Plaintiffs relating to a reinsurance plan which they solicited and sold, primarily that i) Plaintiffs would pay only administrative fees from their payments to Defendants in specified amounts stated for particular services, ii) Plaintiffs would pay no other fees or charges, and iii) the difference between their payments made and the administrative fees charged would be invested on Plaintiffs' behalf in reinsurance pools held and invested for their benefit.

53.    Plaintiffs justifiably relied on Defendants' representations about the reinsurance plan that were false and misleading.

54.    Defendants committed acts which violated their representations to Plaintiffs by, *inter alia*, i) charging fees to their payments which exceeded administrative fees only, ii) charging fees to their payments which exceeded the specified amounts stated to them for particular services, and iii) failing to invest on Plaintiffs' behalf the difference between the payments made and the administrative fees only in reinsurance pools held and invested for their benefit.

55.     As a result of Defendants' false and misleading representations, Plaintiffs suffered consequential damages and losses totaling approximately $800,000, together with interest thereon.

56.     Additionally, in view of the Defendants' egregious, malicious, wanton, fraudulent conduct and disregard for Plaintiffs' rights, Plaintiffs seek punitive damages of $3 million.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Violation of South Dakota Codified Law § 37-24-6 )

57.     Plaintiffs repeat, reallege, and incorporate by reference each of the above paragraphs.

58.     Through emails, communications and other conduct, Defendants made false representations to Plaintiffs in connection with the sale to them of a reinsurance plan, primarily that i) Plaintiffs would pay only administrative fees from their payments to Defendants in specified amounts stated for particular services, ii) Plaintiffs would pay no other fees or charges, and iii) the difference between their payments made and the administrative fees charged would be invested on Plaintiffs' behalf in reinsurance pools held and invested for their benefit.

59.     Defendants engaged in false and deceptive acts towards Plaintiffs by, *inter alia*, i) charging fees to their payments which exceeded administrative fees only, ii) charging fees to their payments which exceeded the specified amounts stated to them for particular services, and iii) failing to invest on Plaintiffs' behalf the difference between the payments made and the administrative fees only in reinsurance pools held and invested for their benefit.

60.     Defendants' false and deceptive acts towards Plaintiffs violated South Dakota Codified Law § 37-24-6.

61.     Plaintiffs were damaged by Defendants' false and deceptive acts and bring this action pursuant to South Dakota Codified Law § 37-24-31.

62.     As a result of Defendants' false and deceptive acts, Plaintiffs suffered consequential damages and losses totaling approximately $800,000, together with interest thereon.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Unjust Enrichment)

63.     Plaintiffs repeat, reallege, and incorporate by reference each of the above paragraphs as if fully set forth herein.

64.     Plaintiffs entrusted Defendants with payments under their reinsurance plan authorizing only that administrative fees in specified amounts stated for particular services be deducted, and that the remainder be invested for their benefit in reinsurance pools.  Plaintiff did not authorize any other charges, fees or payments to Defendants.

65.     Defendants retained monies for themselves without Plaintiffs' authorization which has unjustly enriched them at Plaintiffs' expense.  It is against equity and good conscience for Defendants to retain the monies wrongfully deducted and charged from Plaintiffs' reinsurance payments.

66.     Defendants' unauthorized and wrongful acts have unjustly enriched them by approximately $800,000 at Plaintiffs' expense, and Plaintiffs should be awarded this money, together with interest thereon.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Breach of fiduciary duty)

67.     Plaintiffs repeat, reallege, and incorporate by reference each of the above paragraphs as if fully set forth herein.

68.     Defendant Blakely solicited and induced Plaintiffs to enter into reinsurance plans for its warranty and VSC program by describing the arrangement and representing that it would provide benefits to Plaintiffs from significant overall cost reduction.

69.     Defendants represented themselves to the Plaintiff as possessing specialist knowledge and or skill in advising on products and solutions warranty and VSC administration for vehicle dealerships nationwide, including reinsurance plans.

70.     Plaintiffs made payments under the reinsurance plan authorizing only that administrative fees in specified amounts be deducted, and that the remainder be invested for their benefit in reinsurance pools. Plaintiff did not authorize any other charges, fees or payments to the Defendants beyond the disclosed and stated administrative fee amounts only.

71.     As a fiduciary, the Defendants assumed a position of trust and were obliged to act reasonably, in good faith, and in the best interests of the Plaintiffs.

72.     As a fiduciary, the Defendants were prohibited from self-dealing, the appearance of self-dealing, or committing any act or omission that would constitute a failure to disclose a material fact that would affect the Plaintiff's interests herein.

73.     Defendants breached their duty of good faith and committed self-dealing by, *inter alia*, i) charging fees to their payments which exceeded the disclosed and stated administrative fee amounts ii) charging fees to their payments which exceeded the specified amounts stated to them for particular services, and iii) failing to invest on Plaintiffs' behalf the difference between the payments made and the administrative fees only in reinsurance pools held and invested for their benefit.

74.     As a result of Defendant's breach of fiduciary duty, the Plaintiffs have suffered loss and damages, in an amount to be determined at the trial of this action, but not less than $800,000, together with interest thereon.

## JURY DEMAND

75.     Plaintiffs demand a trial by jury.

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

a) On the First, Fourth, Fifth and Sixth Causes of Action: judgment in an amount to be determined at trial, but believed to be in excess of $800,000, together with interest thereon;

b) On the Second and Third Causes of Action: judgment in an amount to be determined at trial, but believed to be in excess of $800,000, together with interest thereon, and punitive damages of $3 million;

c) Awarding Plaintiffs their costs, disbursements, and attorneys' fees; and

d) Such other and further relief as this Court deems just, equitable, and proper.

Dated: February 9, 2026

Respectfully submitted,

/s/     *Lisa Hansen Marso*
Lisa Hansen Marso
BOYCE LAW FIRM, L.L.P.
300 South Main Avenue
Sioux Falls, SD 57117-5015
(605) 336-2424
lkmarso@boycelaw.com

Edward H. Glenn Jr.
Mark E. White
**BELLAVIA COHEN, P.C.**
200 Old Country Road, Suite 400
Mineola, New York 11501
(516) 873-3000
*Pro hac vice pending*
*Attorneys for Plaintiffs*

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
BROADWAY CHRYSLER, DODGE, JEEP, INC., GAVINS POINT RECREATIONAL CENTER

### DEFENDANTS
ACRISURE PROTECTION GROUP, LLC, SWDS HOLDINGS, INC. and CHRIS BLAKELY

**(b)** County of Residence of First Listed Plaintiff    Yankton
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
BOYCE LAW FIRM, L.L.P., 300 South Main Avenue, Sioux Falls, SD 57117-5015, (605) 336-2424; and BELLAVIA COHEN, P.C., 200 Old Country Road, Suite

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☐ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☒ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                        *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☒ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer   ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:
Breach of contract, conversion, fraud, violation of South Dakota Codified Law § 37-24-6, unjust enrichment and breach of fiduciary duty.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $** $800,000 compensatory

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE
Feb 6, 2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

JS 44 Reverse (Rev. 03/24)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related cases, if any. If there are related cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.